IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER RICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:19-cv-683-SRW |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**[1]

**I.     Introduction**

Plaintiff Christopher Rice commenced this action on September 17, 2019, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("the Act"). *See* Docs. 1, 12. Plaintiff filed his applications on August 23, 2016, alleging that he became disabled on July 15, 2016. Doc. 14-5 at 2-11; R. 180-89. Plaintiff's applications were denied at the administrative level on November 30, 2016. Doc. 14-4 at 23-32; R. 134-43. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Doc. 14-4 at 37; R. 148. On September 27, 2018, ALJ L. Dawn Pischek issued

---

[1] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim was filed at the administrative level. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

an adverse decision after holding a hearing on plaintiff's applications. Doc. 14-2 at 13-15; R. 12-14. On July 22, 2019, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. *See* Doc. 14-2 at 2-4; R. 1-3; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, plaintiff asks the court to reverse the Commissioner's decision and award benefits or, in the alternative, to remand this cause to the Commissioner. *See* Docs. 1 at 2; 12 at 14. This case is ripe for review pursuant to 42 U.S.C. §§ 405(f) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 9, 10. Based on the court's review of the parties' submissions, the relevant law, and the record as a whole, the Commissioner's decision will be affirmed.

## II.     Standard of Review

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was

not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

>   (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>   (4) Is the person unable to perform his or her former occupation?
>   (5) Is the person unable to perform any other work within the economy?
>   An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238–1239. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242–1243. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national

---

[3]*McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

economy that the claimant can perform. *Id.* at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

### III.   Administrative Proceedings

Plaintiff was 45 years old at the time he filed his applications for benefits and was 47 at the time of the ALJ's decision. *See* Doc. 14-2 at 30; R. 29. Plaintiff is a resident of Dothan, Alabama, and he lives in a house with his wife and adopted granddaughter. *See* Docs. 14-2 at 3-4; 14-3 at 2. Plaintiff completed a GED. Docs. 14-2 at 41, 14-3 at 20; R. 40, 87.

Plaintiff claims that his ability to work is limited by rheumatoid arthritis, osteoarthritis, and psychological issues. *See* Doc. 14-2 at 41-42; R. 40-41. Plaintiff previously worked as truck driver, construction worker, and aircraft mechanic, and he has done some painting and body work. *See* Docs. 14-2 at 43-45, 14-3 at 19; R. 42-44, 86. Plaintiff last worked as a heavy wrecker driver from September 2015 until August 2016. *See* Docs. 14-2 at 44, 14-3 at 19; R. 43, 86.

Following the administrative hearing, and employing the five-step process, the ALJ found at step one that plaintiff had "not engaged in substantial gainful activity since July

15, 2016, the alleged onset date." Doc. 14-2 at 18; R. 17. At step two, the ALJ found that plaintiff suffered from the following severe impairments: "sarcoidosis; degenerative disc disease, status post ACDF; osteoarthritis; left knee meniscus tear with chondromalacia, status post arthroscopic repair; diabetes; hypertension; carpal tunnel syndrome; peripheral neuropathy; sleep apnea; gout, obesity; chronic pain syndrome; affective disorder; and anxiety disorder." *Id.* At step three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" *Id.* at 19. Next, the ALJ articulated plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to standing and walking for 4 hours total in an 8-hour workday. The claimant is unable to climb ladders, ropes, or scaffolds, but he can occasionally climb ramps or stairs. The claimant can occasionally balance, stop, kneel, crouch, and crawl. The claimant can perform frequent pushing, pulling, reaching, handling, fingering, and feeling. The claimant can tolerate only occasional exposure to extreme heat, extreme cold, wetness, humidity, dusts, fumes, odors, gases, and vibration. The claimant should not perform commercial driving. He should have no exposure to unprotected heights to hazardous machinery. The claimant is limited to performing simple, routine tasks in 2-hour increments with normal breaks for the duration of an 8-hour workday. The claimant can have occasional interaction with the public; and occasional change in a routine work setting.

*Id.* at 22; R. 21. At step four, based on the testimony of a VE, the ALJ concluded that plaintiff "is unable to perform any past relevant work." Doc. 14-2 at 29; R. 28. At step five, based on the plaintiff's RFC, age, education, work experience, and the testimony of the VE, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" *Id.* at 30; R. 29. Accordingly, the ALJ

determined that plaintiff "has not been under a disability . . . from July 15, 2016, through the date of this decision[.]" *Id.* at 31; R. 30.

## IV.   Issue on Appeal

The sole claim raised by plaintiff on appeal is that the ALJ erred in failing to assign proper weight to the opinions of Dr. Clark, Dr. Misischia, and Dr. Smith, plaintiff's treating physicians.

## V.   Discussion

Plaintiff argues that this case should be reversed or remanded because the ALJ incorrectly gave "great weight" to the opinion of a state medical examiner who was neither a treating nor examining physician, and gave "little weight" or "partial weight" to the opinions of plaintiff's treating physicians, treating psychologist, and consultative examiners, which resulted in a finding that plaintiff was not disabled. *See* Doc. 12 at 9.

The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the ALJ chooses to disregard the opinion of a treating physician, he or she must "clearly articulate" the reasons for doing so. *Id.*; *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); 20 C.F.R. § 404.1527(c)(2) ("good reasons" must always be given in the decision for the weight given to a treating source's medical opinion). "[G]ood cause exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Failure to articulate

clearly the reasons for giving less weight to a treating physician's opinion is reversible error. *See Lewis*, 125 F.3d at 1440. The ALJ must consider multiple factors in weighing a medical opinion:

> [T]he Social Security regulations command that the ALJ consider (1) the examining relationship; (2) the treatment relationship, including the length and nature of the treatment relationship; (3) whether the medical opinion is amply supported by relevant evidence; (4) whether an opinion is consistent with the record as a whole; and (5) the doctor's specialization. Non-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence.

*Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam); 20 C.F.R. § 404.1527(c)).

1. Opinion of Dr. Mason and Dr. Clark

The ALJ gave the opinion of Dr. Mason and Dr. Clark "little weight" because she found that their opinion "was not consistent with the various normal objective medical examination findings." Doc. 14-2 at 28; R. 27.

A report dated August 17, 2016 (titled "Progress Note"), which was authored by Dr. Mason and reviewed by Dr. Clark, notes that plaintiff suffers from "terrible joint pain," that he has a "hard time getting around," and that he has "neuropathy and has numbness and tingling in his [feet] and [legs]." Doc. 14-10 at 69; R. 430. The report describes plaintiff as being diabetic, having a "long history of depression," and suffering from "HT" and "ML." The report notes assessments of depression, fibromyalgia/myalgia/myos, neuropathy NOS, osteoarthritis, diabetes mellitus type II, gout, hypertension, neuropathy, anxiety disorder, cervicalgia, back pain, and sarcoid, *id.* at 73, R. 434, and indicates that plaintiff reported fatigue, vertigo and dizziness, shortness of breath, transient weakness,

numbness of visual disturbance, tingling or numbness, joint pain, arthralgias, joint swelling, and depression, *id.* at 71; R. 432. The report is consistent with previous progress notes prepared by Dr. Mason and Dr. Clark on June 29, 2016 (*id.* at 61-65, R. 422-426); June 21, 2016 (*id.* at 54-58, R. 415-419); June 8, 2016 (*id.* at 45-51, R. 406-412); February 26, 2015 (*id.* at 22-26, R. 383-387); January 27, 2015 (*id.* at 14-18, R. 375-379); October 1, 2014 (*id.* at 4-9, R. 365-370); and Dr. Clark on September 14, 2015 (*id.* at 36-42, R. 397-403), which indicated similar assessments. The progress notes consistently report that the onset of plaintiff's depression, fibromyalgia/myalgia/myos, neuropathy NOS, and osteoarthritis was October 1, 2014. *Id.* at 7, 14, 22-23, 36-37, 45-46, 54, 61, 69-70; R. 368, 375, 383-84, 397-98, 406-07, 415, 422, 430-31. Dr. Mason and Dr. Strunk also completed a progress note on September 27, 2017, which recorded assessments of gout, acute idiopathic gout of the left knee, arthralgia of the left knee, unsteady gait, and knee effusion.

The evidence which the ALJ found to be inconsistent with the aforementioned reports is the following:

- Exhibit 7F/4: A post-operational exam by Dr. Woodham on August 17, 2016, which notes that plaintiff reported, among other things, "no numbness, no tingling, no confusion . . . no muscle weakness, no arthralgias/joint pain, no back pain . . . no depression[.]" Doc. 14-9 at 5, R. 352.
- Exhibit 6F/13-14: A physical exam conducted by Dr. Doty on August 3, 2016, which reports largely normal findings, and CT scan results which "confirm[] multifocal mediastinal and bilateral hilar adenopathy correlating with earlier MRI, most suggestive of sarcoid[.]" Doc. 14-8 at 14-15, R. 344-45.
- Exhibit 8F/47-48: Dr. Mason and Dr. Clark's progress note from June 8, 2016, reporting largely normal results in a physical examination. Doc. 14-10 at 48-49, R. 409-410.
- Exhibit 11F/3: A new patient report based on Dr. Johnson's findings on September 13, 2016, which indicates that plaintiff reported weight loss, muscle aches, fatigue, and depression. Doc. 14-11 at 4, R. 461.

9

- <u>Exhibit 14F/4</u>: A progress note by Dr. Mason and Dr. Clark which indicates assessments of upper respiratory infection, refusal of influenza vaccine, body aches, and a sore throat. Doc. 14-11 at 21, R. 478.

While medical source opinions on issues reserved to the Commissioner, such as opinions about whether a person is "disabled" or "unable to work," are not given any special significance, 20 C.F.R. § 404.1527(d), the ALJ's decision to assign "little weight" to the opinion of Dr. Mason and Dr. Clark, plaintiff's treating physicians between 2014-2017, must be supported by good cause. The ALJ points to largely normal objective findings observed during physical examinations as being inconsistent with the opinion of doctors Mason and Clark (e.g., unlabored breathing, absence of skin lesions or rashes, normal appearance of the ears and nose, equal and round pupils, etc.). *See, e.g.,* Doc. 14-11 at 21, R. 478; *see generally,* Doc. 14-10. The ALJ's determination that Dr. Mason and Dr. Clark's opinion that plaintiff was unable to work was inconsistent with their own medical records, and the ALJ's decision to assign little weight to their medical opinion, was supported by good cause.

2. Opinion of Dr. Misischia

The ALJ gave the opinion of Dr. Misischia "little weight" because "it is not adequately supported with pertinent clinical evidence to establish the degree of limitation endorsed." Doc. 14-2 at 28-29; R. 27-28. The ALJ noted that, as a rheumatologist, Dr. Misischia "treats the claimant for sarcoidosis, not other immune disorders or fibromyalgia." *Id.* at 29; R. 28. The ALJ also found that Dr. Misischia's opinion was "not consistent with many objective normal examination findings in his own records and others, and . . . with the claimant's testimony that he sometimes drives to Tennessee to get his

10

grandchild, [and was] . . . generally inconsistent with claimant's testimony indicating he renewed his [Commercial Driver's License] about a year ago." *Id.* The ALJ cited the same record evidence as those noted in his weighing of Dr. Mason and Dr. Clark's medical opinion, and did not elaborate further.

Dr. Misischia completed a clinical assessment of plaintiff's pain levels on May 25, 2018, which indicated that "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work"; that physical activity such as walking, standing, sitting, stooping, will "[g]reatly increase[] pain and to such a degree as to cause distraction from tasks or total abandonment of task"; and that prescribed medication will have "[s]ome limitations . . . but not to such a degree as to create serious problems in most instances." Doc. 14-13 at 43, R. 610. The clinical assessment includes a handwritten note indicating that Dr. Misischia is a rheumatologist and that his assessment is based on visits with plaintiff. The record contains treatment notes by Dr. Misischia dated from November 11, 2017 to April 2, 2018. Dr. Misischia's initial assessment on November 14, 2017, notes that, despite many normal indications (e.g., constitution, eyes, nose, neck, lungs, skin, back, abdomen, and cardiovascular and neurologic indicators), plaintiff had abdominal pain and sarcoidosis, requiring long term drug therapy. *Id.* at 36-37, R. 567-68. A report dated January 2, 2018, similarly noted various normal physical indications while assessing sarcoidosis and left knee pain and swelling "[s]uggestive of meniscal tear." *Id.* at 33-34, R. 564-65. Dr. Misischia ordered an x-ray of plaintiff's left knee. *Id.* A subsequent report from a follow-up visit on January 26, 2018 indicated that the x-ray was normal but there was potential "internal derangement such as a meniscal dysfunction." Doc. 14-12 at 31, R. 562.

Dr. Misischia noted that plaintiff "is in no apparent distress" and that "[e]xamination of the knee shows the joint to be cool, although "he does have difficulty walking on his left leg." *Id.* Dr. Misischia's notes from January 30, 2018, indicate that plaintiff was still experiencing a lot of pain and had increased swelling at his knee despite receiving a cortisone injection, and included an assessment of "knee joint effusion" of his left knee. Doc. 14-12 at 28, R. 559. On April 2, 2018, Dr. Misischia recorded that plaintiff was recovering from arthroscopy of the left knee and was "walking much better and with less pain." Doc. 14-12 at 25, R. 556. Dr. Misischia's assessments of plaintiff in April continued to include sarcoidosis, long-term drug therapy, and knee joint effusion. *Id.* at 26, R. 557.

Based on the course of treatment and the findings concerning plaintiff's condition noted in Dr. Misischia's reports, there is inadequate support in the record for Dr. Misischia's clinical assessment of plaintiff's pain levels. The ALJ also considered Dr. Misischia's specialization as a rheumatologist and his opinion within the context of the record evidence on the whole, finding that Dr. Misischia's conclusions were inconsistent with various other treatment records. Dr. Misischia's assessment was therefore not supported by evidence, and the ALJ properly articulated good cause for assigning little weight to Dr. Misischia's opinion.

    3. Opinion of Dr. Smith

The ALJ gave the opinion of Dr. Smith "partial weight" because "his opinion that the claimant was unable to work was rendered the same day of his initial consultation with the claimant" and "his opinions are not consistent with the longitudinal evidence showing

very little mental health treatment and minimal complaints prior to March 2018." Doc. 14-2 at 28, R. 27.

Dr. Smith's initial treatment notes, taken on March 12, 2018, indicate a diagnosis of major depression, and note that plaintiff was "suffering from major depression, . . . [and] extreme pain" and was therefore "unable to work at this time." Doc. 14-13 at 49; R. 615. Dr. Smith's clinical progress notes each include a checklist of neurological, mood, affect, behavior, and thought process items which may be checked or unchecked. On March 12, 2018, the checklist indicated that plaintiff was oriented to his person, place, time, and situation; was awake and alert; was feeling sad, hopeless, and worried; had a flat affect; was irritable; and had appropriate thought processes. *Id.* The treatment notes from April 2, 2018, say that plaintiff's diagnosis is that of "major depression – severe, enhanced by medical problems" and that plaintiff was "not sleeping good" and was "encouraged to stay on meds," and the checklist indicated plaintiff was well-oriented, was feeling sad, hopeless, and helpless, had a flat affect, was anxious and irritable, and had appropriate thought processes. Doc. 14-13 at 49; R. 616. Dr. Smith's notes from May 2, 2018, say that plaintiff "has really been feeling in pain," and the checklist indicated that plaintiff was well-oriented; was awake and alert; felt sad, hopeless, helpless, worried, and withdrawn; was anxious and irritable; and had appropriate thought processes. Doc. 14-13 at 50; R. 617. An assessment by Dr. Smith dated June 13, 2018, states that plaintiff is "disabled both medically and mentally . . . medical causes his depression to be worse," and, given the choice between "none," "mild," "moderate," "marked," or "extreme," Dr. Smith rated plaintiff has having a moderate degree of deterioration in personal habits; marked

impairment in plaintiff's ability to ask simple questions or request assistance, to get along with co-workers or peers, to understand, remember, and carry out simple or complex instructions or repetitive tasks, to maintain attention and concentration for extended periods, to make simple work-related decisions, to respond appropriately to supervision, changes in the work setting, or to customary work pressures, to be aware of normal hazards and take appropriate precautions, and in the constriction of plaintiff's personal interests; and extreme impairment in plaintiff's ability to interact appropriately with the general public, to perform daily activities, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to sustain a routine without special supervision, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Doc. 14-13 at 57-59, R. 624-26.

The ALJ described Dr. Smith's report of plaintiff's limitations as "excessive compared to the evidence of the claimant's generally effective treatment for sporadic pain complaints during the relevant period." The ALJ noted the normal findings of plaintiff's neurologic and psychiatric state as reported by Dr. Mason and Dr. Clark on January 19, 2017, Doc. 14-11 at 30, R. 487, which were consistent with similar, normal neurological findings by Dr. Misischia in reports dated between November 2017 and April 2018. Doc. 14-12 at 24-37, R. 555-568, and also noted that plaintiff was tolerating depression well despite discontinuing medication, Doc. 14-10 at 45, R. 406. While the record does show that plaintiff had a history of suffering from depression, it does not indicate that plaintiff's

mental health issues presented the marked and extreme levels of impairment noted by Dr. Smith's assessment of limitations, and Dr. Smith's records also do not contain evidence sufficient to support the degree of impairment noted in his assessment. Therefore, the ALJ properly articulated good cause for assigning partial weight to Dr. Smith's opinion.

### VI. Conclusion and Order

Upon consideration of the parties' briefs and record, the court concludes that the Commissioner's decision is based on substantial evidence and is in accordance with controlling law. The Commissioner's decision will be affirmed by separate judgment.

In addition, it is

**ORDERED** that the plaintiff's motion for an award of EAJA feels is **DENIED**. *See* Doc. 12.

DONE, on this the 2nd day of September, 2020.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge